BREAUX, C. J.
This suit involves the possession of notes, aggregating, exclusive of interest, exactly $2,000.
Interveners’ demand was rejected in the district court.
In the Court of Appeal the court decided that there should have been a nonsuit on the intervention.
The ground of the Court of Appeal for the conclusion was that the certificate of marriage was the best evidence of the marriage, and, until it was produced, or its absence explained, the evidence of eyewitnesses to the ceremony, and all other evidence, was secondary and not the best evidence.
*195 The interveners alleged that they are the heirs of the late John Lawrence, and entitled to the property of his succession.
That among its effects are the notes, representing the amount before stated.
Plaintiff answered the intervention, and denied that interveners are the heirs of John Lawrence; that their mother and father were never married, and it follows that interveners are .not his legitimate heirs.
Our learned Brothers of the Court of Appeal inform us in their decision that John Lawrence died in Shreveport in the summer of 1911. Prank Lawrence, son of John Lawrence, was appointed administrator of his succession.
There was a suit filed in the district court in which the interveners’ demand to be placed in possession of the notes in question was rejected.
The vital question here is whether there was a legal marriage of the mother of interveners to John Lawrence.
The onus of proof of the alleged marriage was with the interveners.
Evidence in support of the alleged marriage, said the court, consists of the deposition of several witnesses, including the mother of the interveners, Mrs. Julian Lawrence, taken in Illinois, who testified that she had in her possession a marriage certificate, “which she' attached to her answer.”
Document typewritten in the German language, on half sheet of ordinary white paper, not properly authenticated, and not for that reason admissible.
Unauthenticated unofficial copy purporting to be an entry of church or governmental record of a marriage of one whose impossible name was John Katsherenski and Julian Laureny, at Porelam, on the 8th of Novem.ber, 1850, obtained, said Mrs. Julian Laureny, several months previously from the records in Germany, and that her husband “quit claiming the long name” and adopted hers, which he spelt Lawrence instead of her maiden name Laureny.
Interveners in the district court offered the deposition of this witness and the asserted certificate.
Objected to by plaintiff because certificate was not authenticated, and objection to the testimony urged because it was an attempt to prove marriage by parol; that there was a certificate of marriage which could be obtained.
The objection, the court held, should have been sustained in the district court. It was not sustained in that court.
Our learned Brothers expressed the opinion that marriage can be proven by parol, subject, however; to the fundamental rule that the best evidence should, none the less, be produced by the one who has the onus of proof.
Evidently, said the court, there was recorded evidence of the marriage, and parol evidence, therefore, was not admissible.
Our Brothers state, in substance, in their opinion, with manifest close attention to the subject in Mercier v. Honan, 39 La. Ann. 94, 1 South. 410, where the title to realty was at issue, secondary evidence should not have been admitted.
With this view, we agree.
But the difficulty in its application is that it is not directly in point. The same is true of Etie v. Sparks, 4 La. 465; Marks & Co. v. Winter, 19 La. Ann. 445; Pendery v. Insurance Co., 21 La. Ann. 410; Isabella v. Pecot, 2 La. Ann. 391; Albinest v. Yazoo & M. V. R. Co., 107 La. 133, 31 South. 675; Succession of Hugbee, 20 La. Ann. 97, and Hennen’s Digest, p. 497 et seq.
In the first decision cited above, attempt was made to prove a written agreement which .was within the power of parties to produce.
In the other cases cited, beginning with Isabella v. Pecot, there was beyond all question better evidence in existence, and it was *197 properly decided that the best evidence must ‘be produced.
True, in Albinest v. Railway Co., 107 La. 133, 31 South. 675, this court said that marriage, like other contracts, may be proved by any species of evidence not prohibited by law, which does not presuppose “a higher species of evidence within the power of the party.”
According to the decisions heretofore cited, parol evidence of persons present, or within whose knowledge beyond question there was a marriage, is considered as direct or primary evidence.
The full text of the opinion does not convey the meaning that proof of marriage is to be considered in the same light as evidence relating to proof of the title to realty and testimony relating to written agreements.
The fact of marriage may be established by oral testimony of persons who were present at the ceremony.
Ency. of Evidence, vol. 8, p. 465.
According to Wigmore on Evidence (section 1336):
The register or certificate of marriage is not preferred to the testimony of eyewitnesses has long been settled.”
This commentator is generally considered as the exponent of the best thought and most authentic views of the different courts of the country.
Similar view is expressed by Wharton in his work on Criminal Evidence (10th Ed.) § 170, p. 403.
Said this commentator:
“A ceremonial marriage may be shown by eyewitnesses,” being in direct connection with the object to be proved, is primary or direct evidence.
Of course the evidence upon the subject must be consistent and cogent.
Marriage may be proved by a marriage certificate or by a person who performed the ceremony, and it may be proved by the testimony (if admissible) of one of the parties to the marriage. It is not always necessary that the record of marriage be produced; it may be proven by oral testimony. Boling v. State, 91 Neb. 599, 136 N. W. 1078.
There is no reason why the oath of the person who officiated as minister should be deemed inferior evidence to his written statement or that of another. Commonwealth v. Dill, 156 Mass. 226, 30 N. E. 1016.
In any civil action in which the mere question of descent of property is involved, the fact of a marriage may, in the absence of a statute positively requiring other evidence, be proven by the testimony of persons who were present and witnessed the ceremony.
Said the coxrt in Baughman v. Baughman, 29 Kan. 283, consideration of these views has brought us to the conclusion that we cannot agree in this instance with our learned Brothers.
For reasons stated, it is ordered, adjudged, and decreed that the judgment of the district court is annulled, avoided, and reversed as between plaintiff on the one hand and the interveners, and as between interveners and the defendant.
It is further ordered, adjudged, and decreed that the judgment of the Court of Appeals is avoided, annulled, and reversed as between the interveners on the one hand and the plaintiff and intervener on the other, and the defendant and intervener on the other. The case is remanded to the district court, to be further proceeded with in accordance with the views before expressed.