PROVOSTY, J.
The plaintiffs are the children and grandchildren and' legal heirs of John T. Dumesnil, deceased; and the defendant is the legatee under his will, and executrix under his will without bond. The numerous demands of the petition, based, all except one, on the supposed nullity of marriage between the deceased and the defendant, need not be detailed, since we have reached the conclusion that the marriage was valid. The one exception is a demand by the plaintiffs to be recognized as legal heirs and put in possession.
Defendant and the deceased went through ceremony of marriage on two different occasions with the intention of marrying. A first time before a justice of the peace, when defendant already had a living, undivorced husband; and a second time before a Catholic .priest after the death of this husband. At this second marriage no new marriage license was obtained; the old one which had served for the marriage before the justice of the peace was made to serve a second time.
The contention of plaintiffs’ learned counsel is that the marriage before the priest was not a marriage, but a mere religious blessing of the null and void marriage before the justice; but the record shows otherwise. The priest testified that “the whole marriage service was read, and everything was done just like if they were being married originally in the church, except the license was not signed.”
“Q. You went through the marriage ceremony? A. Yes, sir; for the church, and had it signed by the witnesses. Q. Did I understand you to say that there were three witnesses' to this marriage performed by you? A. Yes, sir; Father Fountain was there. Q. Do you recognize this marriage performed by you as a valid marriage in the church? A. Yes, sir.”
With reference to the marriage before the justice of the peace the same witness testified:
“Q. You never heard their marriage questioned, or never heard that they not married? A. No, sir; but for the church, it did not recognize them as married.”
The priest thought that, at the time of her marriage before the justice, defendant had been divorced from her first husband, and that as a consequence the first marriage was a valid marriage in the eye of the civil law. though no marriage in the eye of the church; and, as a consequence, he thought that a new license did not need to be obtained nor a new certificate, or act of marriage, be sent to the clerk of court; but he considered that an act or record of the marriage was necessary for the church, and accordingly he made the following entry on the record of marriages of his church, and caused the parties and two witnesses to sign it, the church requiring only two witnesses, and not three, like the civil law:
“In the year one thousand nine hundred and five, the twenty ninth of March,
“I, the undersigned, in view of the license of the Hon. Clerk of Court, no canonical obstacle being known to me, have received the free verbal and mutual consent of marriage between: John T. Dumesnil, legitimate son of age of Theodore Dumesnil and of Odile Fenholt,
“And Marie Eline Senitierre, legitimate daughter of age of Yalcourt Senitierres and of Marie Mendozo, and have given them the nuptial benediction in the presence of the witnesses required by the law, who have signed the present act of marriage with me and the said spouses.”
The learned counsel for plaintiffs -seek to make a point on the circumstance that this “act of marriage” reads, “and have given them the nuptial benediction”; whereas another act of marriage, evidencing the marriage of another couple, and which has been offered in evidence, reads, “and have united them in the sacred bonds of matrimony”; arguing that the one ceremony was merely the religious blessing of a supposedly preexisting marriage, while the other was a uniting in the bonds of matrimony. The argument is by no means conclusive; and. moreover, defendant produced a third act of marriage evidencing the marriage of still *965 another couple and reading precisely as does that of her own marriage.
Learned counsel also argue that the priest testifies that he understood that the parties were already married civilly, and that all that was needed at his hands was a religious blessing of their marriage. It must be admitted that the Reverend Father is not as clear as he might have been in his explanations; but the foregoing extract from his testimony shows unmistakably that the ceremony which had taken place before the justice was no marriage at all in the eye of the church, and that the ceremony which he performed was an actual marriage, and not merely the offering of a prayer over an existing marriage. The record which he drew up, in witness and faith of what he had done, and which he caused to be signed by the witnesses and the parties, was not the record of a prayer or blessing over an existing marriage but, in its own words, was “the present act of marriage.”
True, only two witnesses signed it, and the civil law requires that three shall sign; and true, also, no new license was obtained; but, as already stated, three witnesses were present at the marriage; and if a man and a woman of age and -unmarried go through the ceremony of a marriage freely before a priest and three witnesses, intending to marry, and especially if they thereafter live as husband and wife believing themselves to be such, it is a marriage, even though no license was ever issued and no act of marriage ever drawn up. Civ. Code, art. 105; Holmes v. Holmes, 6 La. 470, 26 Am. Dec. 482; Sucn. of Hubee, 20 La. Ann. 97; Sucn. of Pearce, 30 La. Ann. 1169; Sabalot v. Populus, 31 La. Ann. 854; Sucn. of Fortier, 51 La. Ann. 1562, 26 South. 554.
The defendant insists that at the time of her marriage before the justice of the peace she thought that she had obtained a divorce from her first husband; but we find no necessity of going into that.
We do not understand that defendant has at any time refused to accord to plaintiffs their legal right to be placed in possession upon their complying with the requirements of law in such cases. This was the view taken by the learned judge a quo, and meets with our approval.
The judgment dismissing plaintiffs’ suit is affirmed.