Ora E. FANCHER, Claimant and
Respondent,

v.

NORTH DAKOTA WORKMEN'S COMPEN-
SATION BUREAU, Appellant.

No. 8075.

Supreme Court of North Dakota.

Aug. 22, 1963.

**106** 

Helgi Johanneson, Atty. Gen., and Myron E. Bothun, Asst. Atty. Gen., Bismarck, for appellant.

Walter O. Burk, Williston, for respondent.

TEIGEN, Judge.

Elbert D. Fancher was killed in the course of his employment on September 5, 1954. His employer was insured under the North Dakota Workmen's Compensation Act. The respondent made timely application to the North Dakota Workmen's Compensation Bureau for an award of death benefits as his widow. The statutory special benefits were paid but widow's benefits were declined. A hearing was held before the Bureau on October 17, 1956, at which evidence was adduced. Subsequent thereto the Bureau made its findings of fact and conclusions of law and ordered a dismissal of the respondent's claim. An appeal was taken to the district court. The district court reversed the Bureau, found in favor of the respondent and entered judgment awarding her widow's death benefits within the limits prescribed by the Act, plus reasonable attorney's fees and costs. The Bureau has appealed from the judgment to this court and demands trial de novo.

The Bureau, in dismissing respondent's claim, found she had failed to establish proof of marriage. The district court on appeal found that the record before the Bureau established the marriage and that, up to and including the time of the death of the insured, they were husband and wife. This is the sole question for review in this court.

█ On an appeal from a judgment of the district court rendered on an appeal from a decision of the Workmen's Compensation Bureau, this court on a demand for a trial de novo reviews the whole record the same as in any case tried to the court without a jury. Gullickson v. North Dakota Workmen's Compensation Bureau, N.D., 83 N.W.2d 826.

█ The burden of proof is upon the respondent to show she is entitled to participate in the fund. Section 65-01-11, N.D.C.C.; Booke v. Workmen's Compensation Bureau, 70 N.D. 714, 297 N.W. 779; Kamrowski v. North Dakota Workmen's Compensation Bureau, 64 N.D. 610, 255 N.W. 101; and Dehn v. Kitchen, 54 N.D. 199, 209 N.W. 364.

█ The appeal to the district court, and from the district court to this court, is restricted to the record which was made and certified by the Workmen's Compensation Bureau. Sections 28-32-17, 28-32-19, N.D.C.C.

The record has been reviewed and it discloses that the respondent testified under oath in special hearing before the

Bureau. She testified her name was Ora Ellen Fancher, nee Hughey; that she was 60 years of age; that she and the deceased were married at the home or parsonage of a Baptist minister at Princeton, Indiana, on December 29, 1940, and until the death of the insured remained husband and wife. She testified the deceased was an oil field worker at the time of the marriage, which occupation he followed the remainder of his life and that at the time of the marriage they lived at Grayville, Illinois, but the marriage license was obtained at Evansville, Indiana. A blood test was required and when the results of the blood test were obtained, they went to Princeton, Indiana, which was just across the river from Grayville, Illinois, and were married. She testified a marriage certificate was received but it was destroyed by fire when their automobile burned early in 1954 while at Newcastle, Wyoming, where her husband was then working in the oil fields.

Four driver's licenses were received into the record. The licensed operator, year of expiration, and State are listed as follows: Mrs. E. D. Fancher, 1945, State of Texas; Ora Ellen Fancher, 1944, State of Georgia; Mrs. E. D. Fancher, 1942, State of Illinois; and Ora Hughey Fancher, 1953, State of New Mexico. She testified these licenses were all issued to her.

There was dictated into the record the contents of a social security card exhibited by the respondent at the hearing stating that social security No. 449–50–1365 was issued to Ora Ellen Fancher and she testified she had possessed this card for about six years. The record also contains a photostatic copy of an application for a social security account number applied for by Ora Ellen Fancher, 205 East 12th Street, Odessa, Texas, dated April 24, 1951.

Also in the record are copies of federal income tax returns for the years 1950 and 1953 indicating that joint tax returns were filed by E. D. Fancher and Ora Fancher, as husband and wife, in those years.

The respondent also testified that she and her husband purchased a home in Odessa, Texas, in which they lived. There is contained in the record a warranty deed of a lot described as being located in the town of Odessa, Ector County, Texas, dated October 23, 1945, in which the grantees named are E. D. and Ora Fancher. The granting clause states that the property described is conveyed to "E. D. Fancher and wife, Ora Fancher." The respondent testified this property continued to be their home until the insured's death.

Also contained in the record is a deputy collector's receipt dated September 8, 1949, for income taxes paid by "E. D. & Ora Fancher, Odessa, Texas."

There is a war ration book No. 3 in the record issued to "Oya E. Fancher of Coral Gables, Florida." It contains no date but carries a description of the holder. It has a signature line which is signed "Ora E. Fancher."

The record also contains a photostatic copy of an application for insurance naming Elbert D. Fancher as the applicant and naming the beneficiary as Ora Ellen Fancher, whose relationship is described as wife. It was dated October 31, 1949, at Odessa, Texas, and shows the applicant's address as 205 East 12th Street, Odessa, Texas.

The record contains a letter dated October 8, 1954, from the Social Security Administration directed to Mrs. Ora E. Fancher, 405 N. Washington, Odessa, Texas, re Elbert D. Fancher requesting that she call at the office of the sender to assist in filing application for lump-sum death payment due her on her husband's earning record. She testified she received this payment.

Three affidavits appear in the record in which the deponents state they are acquainted with Elbert D. Fancher and Ora Ellen Fancher, nee Ora Ellen Hughey. Deponents state that the said persons were

married on or about December 29, 1940, and lived together as husband and wife until the death of the said Elbert D. Fancher on or about September 5, 1954; that they owned their own home at 205 East 12th Street, Odessa, Ector County, Texas, for about 11 years and that they held themselves out as husband and wife throughout this period. These affidavits are subscribed to by the following: Mrs. Sallie Kennedy, who deposes she is a second cousin of the deceased; F. M. Fancher, who deposes he is a brother of the deceased; and Mildred Hankhouse, who deposes she is a sister of the deceased.

The record does not clearly indicate whether the respondent lived with the deceased while in North Dakota where he was employed in oil well construction work at the time of his demise. However, the application filed with the Bureau states the last contribution of money made by the deceased to the respondent was as follows: "Aug. 26—1954, a check was deposited in the Citizens State Bank of Ray, North Dak. for Mrs. E. D. Fancher and E. D. Fancher for our home purpose which was at Ray, North Dak." The respondent affirmatively testified that the wedding ring which she was wearing on her left hand was received from the deceased insured.

The Bureau placed in its record two letters written by the attorney for the Bureau to clerks of the circuit court. One was directed to Princeton, Gibson County, Indiana, and the other to Evansville, Vandeburgh County, Indiana, requesting them to search their respective records and to advise whether or not they disclose a marriage license or marriage certificate issued to the deceased and the respondent in the latter part of 1940. Each letter was returned with a notation at the bottom. One stated: "Sorry, no record of marriage in year 1940." It contains no signature. The other stated: "This office has no record of the above marriage." The signature is illegible.

The respondent testified she also had written Evansville, Indiana, for a record of her marriage but received no reply. She testified she turned the matter over to her Texas lawyer who wrote but failed to obtain any documentary proof of the marriage. She testified the witnesses at the marriage were named "Greer" but that they too were oil people. Their home at the time was at Wewoka, Oklahoma, and respondent testified she had not heard from them for about ten years and that letters recently directed to them at Wewoka were returned unclaimed. Oil people, she testified move around a good deal.

On the basis of this record, the Bureau found the respondent had failed to establish marriage in that she had failed to produce any records of a ceremonial marriage and had failed to submit clear or positive and conclusive proof of marriage. The district court on appeal found that the respondent and the deceased insured were married on or about December 29, 1940, at Princeton, Indiana, and that ever since that time, up to and including the time of death of the insured, they were husband and wife.

There is no claim that the marriage, if consummated, was not a valid marriage in the State of Indiana and entitled to recognition in the State of North Dakota under Section 14-03-08, N.D.C.C.

The Bureau points out that the Indiana statutes at the time of the purported marriage required recordation of marriage licenses and marriage certificates in the clerk's office in the county in which such marriage was solemnized and cite the pertinent statutes. They argue that in spite of the existence of this statutory requisite, the respondent either would not or could not produce official documents to substantiate her alleged marriage. Further, the Bureau argues that the respondent produced no witnesses, church record or statement from the Baptist minister as to the alleged ceremonial marriage and that she was afforded ample opportunity to produce these important doc-

uments following the hearing but that no further proof was submitted. For these reasons the Bureau contends that the respondent had failed to sustain the burden of proof and that the evidence was insufficient to establish as a fact the alleged marriage.

Section 31–11–03(30), N.D.C.C., establishes as a disputable presumption "That a man and woman deporting themselves as husband and wife have entered into a lawful contract of marriage."

■ A presumption, unless declared by law to be conclusive, may be controverted by other direct or indirect evidence but, unless so controverted, the finder of the facts is bound to find according to the presumption. Section 31–11–01, N.D.C.C.

■ A presumption takes the place of evidence unless, and until, evidence appears to overcome or rebut it, but when evidence sufficient in quality appears to rebut it, the presumption disappears and thereafter determination of issues depends upon evidence with the requirement that the party having the affirmative of the issue involved sustain his position by a preponderance of the evidence. Johnson v. Johnson, N.D., 104 N.W.2d 8, 82 A.L.R.2d 1029.

■ The effect of a presumption is to place upon the person against whom it is employed the burden of going forward with proof to rebut it. Johnson v. Johnson, supra.

The Bureau did not, by its findings, determine the fact in issue but merely declared in its conclusions of law that the respondent failed to establish that she is the lawful wife of the deceased because she failed to produce any records of a ceremonial marriage or clear, positive and conclusive proof of marriage, and for these reasons the Bureau dismissed her claim. These findings are simply declarant of the opinion of the Bureau that there is a lack in the quantity of evidence necessary to a determination of the point involved. We find there is ample evidence to apply the presumption that a lawful contract of marriage had been entered into considering the sworn testimony of the respondent and the documentary evidence alluded to above. This was primary evidence and sufficient in itself as a basis for the presumption.

■ In view of the legal presumption of marriage arising from the conduct of the parties, it must be held that the evidence, instead of being insufficient, was ample to establish the fact that the respondent was the wife of the deceased insured at the time of the accident which took his life. When this presumption was established, the respondent had proved a prima facie claim and the burden of going forward with the evidence was cast upon the Bureau. The letters returned by the clerks of the counties of Gibson and Vandeburgh of the State of Indiana are the only evidence we find to support this burden. We conclude they do not sustain the burden. Neither would be admitted in evidence over objection if offered in a court trial. One does not bear a signature of any kind and the other, even if permitted to stand, does not prove that the marriage was not recorded in the other county. We find the presumption was not controverted.

No reasonable inference can be drawn from the letters which conflicts with the positive testimony given by the respondent that a marriage ceremony was performed and that she was the wife of the deceased insured at the time he received the injury which resulted in his death, plus the uncontroverted fact that for 14 years they deported themselves as husband and wife. Svihovec v. Woodmen Accident Co., 69 N.D. 259, 285 N.W. 447; Dick v. New York Life Insurance Co., 359 U.S. 437, 79 S.Ct. 921, 3 L.Ed.2d 935, and North Dakota cases cited therein; Landsrath v. Industrial Accident Commission of California, 77 Cal. App. 509, 247 P. 227; Winder v. Consolidated Underwriters, 5 Cir., 107 F.2d 973; Oliphant v. Louisiana Long Leaf Lumber

Co., 163 La. 601, 112 So. 500; Rea v. Fornan, Ohio Sup., 46 N.E.2d 649; and Thomson v. Thomson, 236 Mo.App. 1223, 163 S.W.2d 792.

The judgment is affirmed.

MORRIS, C. J., and BURKE, ERICKSTAD and STRUTZ, JJ., concur.